# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

3261 North 30th Street, Milwaukee, Wisconsin

)
)
)
)
)
)

Case No. **18-M-103 (DEJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841 and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
    under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Jeffrey Baker, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: Aug. 7, 2018

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin
_____
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey Baker, a Special Agent with the Federal Bureau of Investigation, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a residential dwelling described in Attachment A, and the extraction from that property of evidence described in Attachment B.

2.  I am a Special Agent for the Federal Bureau of Investigation (FBI). I have been an FBI Agent with the Southeastern Wisconsin Regional Gang Task Force since October of 2017. I have received training in the investigation of drug trafficking. I have worked with informants in the investigation of drug trafficking in the Milwaukee area. I have participated in search warrants, investigations, and arrests in which controlled substances and drug paraphernalia were seized. I am familiar with the street names of various drugs in the Milwaukee area including marijuana, heroin, and cocaine. I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the Milwaukee area. Through my training and experience, I know that drug dealers are not on a regular schedule and can conduct drug deals at any time of the day.

3.  As a Special Agent, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other

1

evidence of criminal activity. As a narcotics investigator, I have interviewed individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in many aspects of drug investigations, including physical surveillance, execution of search warrants and arrests of numerous drug traffickers. I have also spoken with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers.

4.    I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States.

5.    I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

6.    I know that drug traffickers commonly have firearms, ammunition, and records or receipts pertaining to such in their possession and at their residences and other locations where they exercise dominion and control.

7.     I know that drug traffickers often list their telephones in nominee names in order to distance themselves from telephones that are used to facilitate drug trafficking; and that drug traffickers frequently change phone numbers in an effort to thwart law enforcement.

8.     I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement.

9.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10.    As detailed below, I believe that there is probable cause that located within the following properties in the City of Milwaukee, further described in Attachment A, are items that constitute evidence of drug trafficking, including violations of Title 21, United States Code, sections 841 and 846.

**IDENTIFICATION OF PREMISES AND VEHICLES TO BE SEARCHED**

11.    That affiant is requesting permission to execute a search warrant at the following properties and vehicles:

3

A. **1815 1st Avenue, Grafton, Wisconsin**
Single condominium unit attached to a complex of units. It is the southernmost unit in the block long complex. The main entrance is a white east facing screen door with tan interior wooden door. The numbers "1815" are prominently displayed in two-inch black color numerals directly to the left of the white screen door. The lower of the exterior is composed of red brick and tan wood siding. The upper portion of the exterior is composed of brown shingle siding. The roof is composed of brown shingles. There is a secondary exterior door on the west side of the unit adjacent to the parking lot.

B. **330 West Keefe Avenue, Apartment #5, Milwaukee, Wisconsin**
Multi-unit apartment complex having a tan brick exterior with grey trim around the windows and a black tar roof. The numbers "330" are displayed in a horizontal fashion to the west of the south facing front entry door. Apartment #5 is located on second floor southeast corner with the number "5" displayed on the white wood door.

C. **2655 North 15th Street, Milwaukee, Wisconsin**
The lower of a two-story duplex having yellow aluminum siding with white trim around the windows and a black roof. The number "2655" is displayed to the north of the east facing front entry door.

D. **3261 North 30th Street, Milwaukee, Wisconsin**
The lower of a two story duplex having tan aluminum siding with brown window trim and a grey shingled roof and has a brown porch constructed of wood with four pillars. The east facing main entrance door is a black security gate with a white interior door. This leads directly into 3261 North 30th Street lower.

E. **3110 North 35th Street, Apartment #4, Milwaukee, Wisconsin**
Multi-unit apartment complex having brown brick exterior with dark brown trim around the windows and a black tar roof. Apartment #4 is located on the second floor in the north portion of the apartment building. The

4

entrance apartment four is located on the second floor on the east side of the apartment building. The entry door is white and is the northern most door on the east side of the apartment building.

F.    **3071A North 19th Street, Milwaukee, Wisconsin**
The upper of a two-story duplex having yellow exterior siding and a red-shingled roof. The number "3071A" is displayed in a horizontal fashion on the east side of the house. The entrance door to 3071A is a white door on the south side of the building.

G.    **3044 North Richards Street, Milwaukee, Wisconsin**
The lower of a two-story duplex having white aluminum siding with white trim and a brown-shingled roof. The number "3044" is displayed in a horizontal fashion to the south of the west facing security gated front door.

H.    **5800 North 91st Street, Northeast First Floor Apartment Milwaukee, Wisconsin**
Multi-unit apartment complex having a tan brick exterior with brown and white window trim and a red-shingled roof; that "5800" is displayed in a horizontal fashion above the double white west facing front entry doors. The entrance to the target location is located on the first floor in the northeast corner of the apartment building. The entry door is white and is located on the east side of the apartment building and faces east. The entry door is the northern most door on the east side of the building.

I.    **Black 2013 Cadillac XTS**, WI registration 659-ZH, VIN#2G61W5S36D9220166, registered to Harris James Trust.

J.    **White 2014 Lincoln MKT**, WI registration ACV-2418, VIN#2LMHJ5AT2EBL54470, registered to Jasmine Grace (Roderick Ramsey's Girlfriend).

12.    The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

13.     The Federal Bureau of Investigations (FBI) Gang Task Force (GTF), which includes Special Agents of the DEA, FBI, and federal Task Force Officers, are conducting an investigation into the criminal activities of James T. Harris (Age: 52) and his Drug Trafficking Organization (DTO) as it relates to the trafficking of heroin into Milwaukee, Wisconsin between January 2016 to the present.

14.     In 2017, members of the FBI GTF, developed a confidential source (hereinafter referred to a CS1). CS1 was a heroin dealer for James Coleman, who is a member of the Harris DTO. CS1 stated that between January 2017 and April 2017, s/he worked as a heroin dealer for James Coleman out of 2655 N. 15th Street, Milwaukee, WI. In 2017, CS1 began working for Coleman after James Harris requested that CS1 become one of Harris' heroin dealers.

15.     For several reasons, case agents believe that CS1 is reliable and credible. First, CS1 has been providing continuous information since March of 2017. Second, the information CS1 has provided is substantially against CS1's penal interest. Third, the information provided by CS1 is consistent with evidence obtained elsewhere in this investigation where CS1 was not utilized, and substantial portions of CS1's information have been corroborated through independent investigation, including surveillance and information from other sources. Finally, CS1 has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein. CS1 is cooperating in exchange for credit towards CS1 pending criminal case. CS1 has provided law enforcement with timely and accurate

6

information corroborated by law enforcement through consensually recorded conversations, controlled buys, and other witness and law enforcement reporting.

16.    In early 2017 and while inside of 2773A N. 41st Street, Milwaukee, WI , CS1 saw Harris packaging a half-kilo of heroin for sale, and s/he saw Harris use Dormin as a cutting agent prior to its packaging.

17.    CS1 identified James Coleman, Kurt Parks, Roderick Ramsey, and Todd McGown as heroin traffickers who purchased their heroin from Harris between January 2017 and April 2017. CS1 also personally observed Roderick Ramsey, Harris' nephew, deliver heroin to Coleman for sale.

18.    CS1 further stated that Harris once called CS1 and told him/her that Harris was in Chicago picking up heroin from his source of supply.

19.    In 2017, members of the FBI GTF, developed a confidential source (hereinafter referred to as CS4). CS4's information dates from January 2017 to the present.

20.    For several reasons, case agents believe that CS4 is reliable and credible. First, CS4 has been providing continuous information since approximately June of 2017. Second, the information CS4 has provided is substantially against CS4's penal interest. Third, the information provided by CS4 is consistent with evidence obtained elsewhere in this investigation where CS4 was not utilized, and substantial portions of CS4's information have been corroborated through independent investigation, including surveillance and information from other sources.  Finally, CS4 has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein.  CS4 is cooperating in exchange for

monetary compensation. CS4 has provided law enforcement with timely and accurate information corroborated by law enforcement through consensually recorded conversations, controlled buys, and other witness and law enforcement reporting.

21.     CS4 is an associate of the Harris DTO and is intimately familiar with aspects of the Harris DTO. CS4 stated that Harris is large heroin dealer in Milwaukee, and his main partner is Nequann Terry, Harris' son. CS4 has observed Terry packaging and distributing heroin several times in Milwaukee since January 2018 in Terry's vehicle and at 330 West Keefe, Apartment #5, Milwaukee and at 2773A North 41st Street, Milwaukee. CS4 has observed Harris front (allowing narcotics to be sold on credit) heroin to Terry approximately 40 times since January 2017.

22.     CS4 observed Harris on multiple occasions distribute heroin to Nequann Terry, James Coleman, Kurt Parks, and Marques Williams. CS4 stated that s/he personally observed Harris front heroin to: (1) Nequann Terry at 330 West Keefe Avenue Apartment 5, Milwaukee, WI; (2) James Coleman at 2665 North 15th Street, Milwaukee, WI; (3) Kurt Parks at 2773A North 41st Street, Milwaukee, WI; and (4) Marques Williams at 3071A North 19th Street, Milwaukee, WI.

23.     CS4 further identified Kurt Parks' heroin workers as Don Tillman, Antoine Jeff, and Casey Johnson. CS4 saw Antoine Jeff purchase a half-ounce of heroin from Harris approximately two to three times from June 2017 to August 2017 at 3261 North 30th Street, Milwaukee, WI. CS4 identified Marques Williams as a heroin trafficker who receives his heroin supply from Harris and Terry at 3071A North 19th Street, Milwaukee, WI.

8

24.     CS4 also believes that Harris receives his heroin from a relative in Chicago because he heard Harris and Kurt Parks discussing that arrangement.

25.     In 2018, members of the FBI GTF developed a confidential source (hereinafter referred to as CS6).

26.     For several reasons, case agents believe that CS6 is reliable and credible. First, CS6 has been providing continuous information since April of 2018. Second, the information provided by CS6 is consistent with evidence obtained elsewhere in this investigation where CS6 was not utilized, and substantial portions of CS6's information have been corroborated through independent investigation, including surveillance and information from other sources. Finally, CS6 has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein. CS6 is cooperating in exchange for credit towards CS6 pending criminal case.

27.     CS6 stated s/he had been purchasing heroin three times a week from a subject s/he know as "Rah Rah" since June/July of 2017 at 3044 North Richards Street, Milwaukee, WI, and at an apartment of the lower northeast corner of the an apartment complex located at 5800 North 91st Street, Milwaukee, WI. Case agents know "Rah Rah" to be Roderick Ramsey, who is James Harris nephew. Case agents showed CS6 a Milwaukee Police Department booking photo of Roderick Ramsey, which CS6 positively identified as the subject CS6 knows as "Rah Rah."

28.     CS6 stated that in May 2018, s/he observed James Harris at Roderick Ramsey's residence 3044 North Richards Street, Milwaukee, WI, when CS6 was

9

purchasing heroin from Ramsey. In May 2018, CS6 positively identified a photograph of James Harris, but did not know what Harris' name was. CS6 stated that while CS6 was purchasing heroin from Ramsey at 3044 North Richards Street, Milwaukee, CS6 observed James Harris walk from a back room during the drug deal with Ramsey. In late July 2018, CS6 also stated that Ramsey was still actively selling heroin out of 3044 North Richards Street, Milwaukee and 5800 North 91st Street, Milwaukee.

29.    In 2017, members of the FBI GTF, developed a confidential source (hereinafter referred to as CS7).

30.    For several reasons, case agents believe that CS7 is reliable and credible. First, CS7 has been providing continuous information since April of 2018. Second, the information provided by CS7 is consistent with evidence obtained elsewhere in this investigation where CS7 was not utilized, and substantial portions of CS7's information have been corroborated through independent investigation, including surveillance and information from other sources. Third, CS7 has made statements to case agents that are against his/her penal interests, in that CS7 has admitted his/her involvement in the Harris DTO's activities in the past. Finally, CS7 has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein. CS7 is cooperating in order to be a good citizen and potential future monetary compensation.

31.    CS7 stated that Harris' source of supply is Stanley George and that the purchases of heroin occur at Harris' mother's residence in Chicago. CS7 saw Harris purchase heroin from George over 10 times between February 2016 to December 2018.

Each time Harris purchased heroin, it was never less than a kilo. The FBI was able to verify the identity of Stanley George and verified that Harris' mother does reside in Chicago. CS7 identified Adline Harris, Harris' wife, as a person who often transports heroin from Chicago to Milwaukee for the Harris DTO.

32. In 2018, members of the FBI GTF, developed a confidential source (hereinafter referred to as CS8).

33. For several reasons, case agents believe that CS8 is reliable and credible. First, the information provided by CS8 is consistent with evidence obtained elsewhere in this investigation where CS8 was not utilized, and substantial portions of CS8's information have been corroborated through independent investigation, including surveillance and information from other sources. Second, CS8 has made statements to case agents that are against his/her penal interests, in that CS8 has admitted his/her involvement in the Harris DTO's activities in the past. Finally, CS8 has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein. CS8 is cooperating in exchange for consideration in a pending criminal case.

34. CS8 worked with the Harris DTO from spring 2016 to spring 2017. CS8 saw Harris receive heroin from a Chicago source. CS8 saw Harris package heroin almost every day, and CS8 saw Harris cut the heroin with Dormin. CS8 assisted the packaging of Harris' heroin, and s/he said that Harris would receive approximately 2-3 kilos of heroin every month. CS8 saw James Coleman and Kurt Parks purchase heroin almost every day from Harris – at times, Harris fronted the heroin to James Coleman and Kurt Parks.

11

35.     On January 31, 2018, the FBI GTF conducted a garbage pick at one of Harris'

former drug locations (2773A N. 41st Street, Milwaukee) and located Dormin (heroin

cutting agent), corner cuts that tested positive for the presence of heroin, and identifiers

for Harris and Nequann Terry. This further corroborates the confidential source

information.

36.     The investigation into the Harris DTO included an investigative technique

known as a "controlled buy." Based on my training and experience, I know a "controlled

buy" is a law enforcement operation in which an informant purchases drugs from a

target. The operation is conducted using surveillance, usually audio and video taping

equipment, and pre-recorded purchase money.   When an informant is used, s/he is

searched for contraband, weapons, and money before the operation. The informant is also

wired with a concealed body recorder and/or a monitoring device. When the transaction

is completed, the informant meets cases agents at a pre-determined meet location and

gives the purchased drugs and the recording/monitoring equipment to the case agents.

The informant is again searched for contraband, weapons, and money and then

interviewed by the case agents about the drug transaction. A sample of the suspected

drugs is then field tested by the case agents for the presence of controlled substances and

then placed in inventory pursuant to normal inventory procedures. All of the calls to the

target by the informants are consensually recorded calls under the direction and control

of case agents and made in the presence of case agents. Additionally, case agents observe

the informants dial the target's number on each occasion and the contact is verified

through telephone records. Unless otherwise noted, the controlled buys and telephone contacts summarized below were conducted pursuant to the above procedures.

37. The below controlled buys are believed to be connected to members or associates of the Harris DTO:

- On April 22, 2017, the FBI GTF conducted a controlled buy of heroin from James Coleman of 2.52 grams of heroin at 4200 W. Stark Street, Milwaukee.

- On April 24, 2017, the FBI GTF conducted a controlled buy from James Coleman of 4.3 grams of heroin at 1200 W. Garfield Avenue, Milwaukee.

- On May 12, 2017, the FBI GTF conducted a controlled buy from James Coleman of 9.11 grams of heroin at 2655 N. 15th Street, Milwaukee. During the controlled buy, James Coleman. The CI stated that Skinner was selling heroin to other buyers during the controlled buy (this was not captured on the recording).

- On May 24, 2017, the FBI GTF conducted a controlled buy from James Harris and Roderick Ramsey of 7.8 grams of heroin at 2773 N. 41st Street, Milwaukee. CS1 called Harris who directed CS1 to call Roderick Ramsey to fulfill the request. CS1 called Ramsey who sold the heroin to CS1.

- On July 21, 2017, the FBI Task Force conducted a controlled buy from Don Tillman of 2.2 grams of heroin at 2605 N. 26th Street,

13

Milwaukee. During the controlled buy, CS4 called Parks who told him to complete the purchase with his worker, "Don."

- On July 25, 2017, FBI GTF conducted a controlled buy from Antoine Jeff of 3.1 grams of heroin at 3261 North 30th Street, Milwaukee.

- On August 2, 2017, FBI GTF conducted a controlled buy from Antoine Jeff of 2.5 grams of heroin at 3261 North 30th Street, Milwaukee. During the controlled buy, CS4 contacted Tillman who told the CS that he did not have heroin because Parks was arrested so he should call Jeff.

- On August 7, 2017, the FBI Task Force conducted a controlled buy from Don Tillman of 3.7 grams of heroin at 2869 N. 26th Street, Milwaukee. During the controlled buy, Tillman told CS4 that he was waiting for Parks to drop off some heroin for him to sell.

- On August 27, 2017, the FBI Task Force conducted a controlled buy from Don Tillman of 3.07 grams of heroin at 2869 N. 26th Street, Milwaukee.

- On October 12, 2017, the FBI Task Force conducted a controlled buy from Don Tillman of 2.37 grams of heroin at 2869 N. 26th Street, Milwaukee.

- On April 10, 2018, the FBI GTF conducted a controlled buy from Todd McGown of 2.39 grams of heroin at 3110 North 35th Street, Milwaukee.

14

- On April 12, 2018, FBI GTF conducted a controlled buy from Todd McGown of 4.5 grams of heroin at 3110 North 35th Street, Milwaukee.

- On April 17, 2018, FBI GTF conducted a controlled buy from Casey Johnson of 2.83 grams of heroin at 3069 North 29th Street, Milwaukee. During the controlled buy, CS4 spoke to Terry who said call his guy "KC."

- On April 20, 2018, FBI GTF conducted a controlled buy from Casey Johnson of 4.87 grams of heroin at 3069 North 29th Street, Milwaukee.

- On May 15, 2018, FBI GTF conducted a controlled buy from Antoine Jeff of 1.55 grams of heroin at 3261 North 30th Street, Milwaukee.

- On May 17, 2018, FBI GTF conducted a controlled buy from Todd McGown of 4.5 grams of heroin at 3500 West Fond Du Lac Avenue, Milwaukee.

- On May 21, 2018, FBI GTF conducted a controlled buy of heroin from Roderick Ramsey of 1.02 grams of heroin at 2940 North 21st Street, Milwaukee.

- On May 24, 2018, FBI GTF conducted a controlled buy of heroin from Nequann Terry of 2.06 grams of heroin at 6016 North 61st Street, Milwaukee. During the controlled buy, CS4 spoke with Harris and Terry outside of 6016 North 61st Street, and at that time, Harris directed Terry to "Take care of that business." Shortly after, CS4 and

Terry entered the residence, and CS4 conducted the purchase of heroin from Terry.

- On May 29, 2018, FBI GTF conducted a controlled buy from Roderick Ramsey of .55 grams of heroin at 5800 North 91st Street, Milwaukee.

- On May 30, 2018, FBI GTF conducted a controlled buy from Nequann Terry of 1.97 grams of heroin at 1845 West Hopkins Street, Milwaukee.

- On June 4, 2018, the FBI GTF conducted a controlled buy from James Coleman of .16 grams of heroin from 2655 N. 15th Street, Milwaukee.

- On July 10, 2018, the FBI GTF conducted a controlled buy from "Luther" at the direction of Marques Williams of 2.05 grams of heroin in the area of 3071 N. 19th Street, Milwaukee.

- On July 12, 2018, the FBI GTF conducted a controlled buy from "Luther" at the direction of Marques Williams of 2.98 grams of heroin in the area 3071 N. 19th Street, Milwaukee.

- On July 25, 2018, the FBI GTF conducted a controlled buy from Antoine Jeff of 1.8 grams of heroin from 3261 North 30th Street, Milwaukee.

- On July 25, 2018, the FBI GTF conducted a controlled buy from "Herron" at the direction of Todd McGown of 2.93 grams of heroin in the area 3110 North 35th Street, Milwaukee.

16

- On July 25, 2018, the FBI GTF conducted a controlled buy from "Luther" of 2.71 grams of heroin in the area of 3071 N 19th Street, Milwaukee.

- On July 30, 2018, the FBI GTF conducted a controlled buy from Roderick Ramsey of 0.58 grams of heroin in the area of 3044 North Richards Street.

### 1815 1st Avenue, Grafton, Wisconsin

38.     Agents of the FBI GTF believe that 1815 1st Avenue, Grafton, WI, is occupied by James Harris and his wife, Adline Harris. At the beginning of June 2018, CS4 alerted case agents that James Harris and Adline Harris moved from their residence located at 9401 West Calumet Road #208, Milwaukee, WI, to a location in Grafton Wisconsin. On June 1, 2018, James Harris updated his Wisconsin Department of Corrections address to 1815 1st Avenue, Grafton, WI (Harris is currently on active Wisconsin Department of Corrections supervision). On June 14, 2018, both James Harris and Adline Harris updated their Wisconsin Department of Transportation address to 1815 1st Avenue, Grafton WI. As of June 2, 2018, Adline Harris is the listed utilities subscriber through WE Energies for 1815 1st Avenue in Grafton, WI.

39.     Through telephonic electronic surveillance, case agents placed James Harris' cellphone at 1815 1st Avenue in Grafton, WI, more than 10 times since June 1, 2018. On July 24, 2018, case agents personally observed James Harris enter the residence located at 1815 1st Avenue, Grafton, WI.

40.     Case agents know that James Harris has a history of keeping heroin at one

location and the proceeds of the heroin trafficking at a secondary location. CS8 witnessed Harris and members of the Harris DTO at 2773A North 41st Street, Milwaukee, WI, when they would receive, cut, and distribute heroin from this residence. CS8 stated that the proceeds from the heroin sales would then go back to Harris' primary residence, which at that time was located at 9401 West Calumet Road #208, Milwaukee, WI.

41.     Case agents believe that 1815 1st Avenue, Grafton is the primary storage area for the proceeds of the heroin trafficking from the Harris DTO.

42.     CS7 identified Adline Harris as a person who often transports heroin from Chicago to Milwaukee for the Harris DTO.

43.     In my training and experience as a federal agent, I know that it is a common for a drug trafficker's residence to contain evidence of drug trafficking, such as contraband, proceeds, and records.

**330 West Keefe Avenue, Apartments #5, Milwaukee, Wisconsin**

44.     Agents of the FBI GTF believe that 330 West Keefe Avenue, Apartment #5, Milwaukee, WI, is occupied by Nequann Terry. On July 11, 2018, Nequann Terry updated his Wisconsin Department of Transportation address to 330 West Keefe Avenue Apartment #5, Milwaukee, WI. James Harris and Nequann Terry are the listed as the utilities subscribers through WE Energies for 330 West Keefe Avenue, Apartment #5, Milwaukee, WI.

45.     In the mid-June 2018, CS4 was inside of 330 West Keefe Avenue Apartment #5 when s/he saw James Harris bring an unidentified amount of heroin into the apartment complex. CS4 stated that s/he observed Nequann Terry with a firearm in

18

Apartment #5 within the last 60 days. CS4 identified Terry as a current heroin dealer for the Harris DTO who resides at and furthers heroin trafficking at 330 West Keefe Avenue, Apartment #5, Milwaukee, WI.

46.     CS4 stated that the entry door to Apartment #5 is barricaded. The barricades consist of a horizontal 2x4 across the door and a 2x4 inserted into a floor bracket which provides additional fortification.  I know that from training and experience that drug dealers use fortification in order to secure their residences from law enforcement and others individuals attempting to gain access to their residence.

47.     On February 17, 2018, Milwaukee police officers were dispatched to a property damage complaint at 330 West Keefe, Milwaukee, WI. The caller stated that her landlord was "J. Harris" with a cellphone number of 414-595-7809. Case agent know this to be one of James Harris's cellphone numbers.

48.     Based off electronic and physical surveillance, case agents have placed James Harris at 330 West Keefe Avenue over 100 times, most recently on July 24, 2018. In addition, case agents case agents have placed Nequann Terry at 330 West Keefe through physical surveillance approximately 10 times, most recently on July 24, 2018.

49.     Case agents also observed James Harris 2013 Cadillac XTS, with Wisconsin license plate 659-ZHL parked at 330 West Keefe on over 25 occasions, most recently on July 25, 2018. Law enforcement verified that this vehicle is registered through WI DOT to James Harris Trust and used by Harris. Case agents have observed Harris driving the Cadillac XTS over 20 times.

50.     In my training and experience as a federal agent, I know that it is a common

for a drug trafficker's residence to contain evidence of drug trafficking, such as contraband, proceeds, and records.

**2655 North 15th Street, Milwaukee, Wisconsin**

51.     Agents of the FBI GTF believe that 2665 North 15th Street, Milwaukee, WI is occupied by James Coleman. Coleman's current Wisconsin Department of Transportation address lists him to 2655 North 15th Street, Apartment #1, Milwaukee, WI. Coleman updated his Wisconsin Department of Transportation address on August 18, 2017. James Coleman is the current listed utilities subscriber through WE Energies for 2655 North 15th Street, Milwaukee, WI.

52.     On March 16, 2017, law enforcement officers executed a search warrant at Coleman's residence located at 2655 N. 15th St., Milwaukee, WI. During the search at the residence, law enforcement officers located the following items of evidentiary value within the residence:

- Two clear plastic bags that contained 155 aluminum foil bindles that contained 41.25 grams heroin.

- A loaded Taurus, semi-automatic pistol.

- A plastic bag that contained $5,115.00 of U.S. Currency.

- Two black Digitz digital scales inside of the west bedroom of the residence in the dresser drawers. This bedroom was later determined to belong to James Coleman.

53.     The FBI GTF conducted the following controlled buys at 2655 N. 15th Street, Milwaukee:

20

- On May 12, 2017, the FBI Task Force conducted a controlled buy from James Coleman of 9.11 grams of heroin at 2655 N. 15th Street, Milwaukee. The CI stated that Justin Skinner, Coleman's son, was selling heroin to other buyers during the controlled buy.

- On June 4, 2018, the FBI Task Force conducted a controlled buy from James Coleman of .16 grams of heroin at 2655 N. 15th Street, Milwaukee.

54.     CS1, CS7, and CS8 identified Coleman as a member of the Harris DTO.

55.     CS1 stated that between January 2017 and April 2017, s/he worked as a heroin dealer for James Coleman out of 2655 N. 15th Street, Milwaukee, WI.

56.     CS4 identified Coleman as a current heroin dealer for the Harris DTO who resides at 2665 North 15th Street, Milwaukee, WI.

57.     In my training and experience as a federal agent, I know that it is a common for a drug trafficker's residence to contain evidence of drug trafficking, such as contraband, proceeds, and records.

### 3261 North 30th Street, Milwaukee, Wisconsin

58.     Agents of the FBI GTF believe that 3261 North 30th Street, Milwaukee, WI, is occupied by Antoine Jeff. Jeff's current address through the Wisconsin Department of Transportation, which he updated on March 25, 2014. The listed utilities describer through WE Energies is Danielle Pinkston.

59.     CS4 identified Kurt Parks' heroin workers as Don Tillman, Antoine Jeff, and Casey Johnson. CS4 saw Antoine Jeff purchase a half-ounce of heroin from Harris

21

approximately two to three times from June 2017 to August 2017 at 3261 North 30th Street, Milwaukee, WI.

60. On July 25, 2017, FBI GTF conducted a controlled buy of heroin from Antoine Jeff. CS4 purchased 3.1 grams of heroin at 3261 North 30th Street, Milwaukee with $400.00 in controlled buy money.

61. On August 2, 2017, FBI GTF conducted a controlled buy of heroin from Antoine Jeff. CS4 purchased 2.5 grams of heroin at 3261 North 30th Street, Milwaukee with $500.00 in controlled buy money.

62. On May 15, 2018, FBI GTF conducted a controlled buy of heroin from Antoine Jeff. CS4 purchased 1.55 grams of heroin at 3261 North 30th Street, Milwaukee with $200.00 in controlled buy money.

63. On July 25, 2018, the FBI GTF conducted a controlled buy of heroin from Antoine Jeff. CS4 purchased 1.8 grams of heroin from 3261 North 30th Street, Milwaukee, with $300.00 of controlled buy money.

64. In my training and experience as a federal agent, I know that it is a common for a drug trafficker's residence to contain evidence of drug trafficking, such as contraband, proceeds, and records.

### 3110 North 35th Street, Apartment #4, Milwaukee, Wisconsin

65. Agents of the FBI GTF believe that 3110 North 35th Street, Apartment #4, Milwaukee, WI, is occupied by Todd McGown. This residence is McGown's current Wisconsin Department of Transportation address. On December 18, 2016, McGown updated his Department of Transportation address to 3110 North 35th Street, Apartment

22

#4, Milwaukee, WI. The listed utilities subscriber through WE Energies is Mandisa Dempsey.

66.     On May 16, 2017, Milwaukee Police responded to 3110 North 35th Street Apartment #4. The caller identified himself as Todd McGown. McGown stated that his vehicle was stolen from the location.

67.     On April 10, 2018, the FBI GTF conducted a controlled buy of heroin from Todd McGown at 3110 North 35th Street, Apartment #4. CS4 purchased 2.39 grams of heroin with $200.00 in controlled buy money.

68.     On April 12, 2018, FBI GTF conducted a controlled buy of heroin from Todd McGown at 3110 North 35th Street, Apartment #4. CS4 purchased 4.5 grams of heroin with $300.00 in controlled buy money.

69.     On May 17, 2018, FBI GTF conducted a controlled buy of heroin from Todd McGown in the parking lot across the street from 3500 West Fond Du Lac. CS4 purchased 4.5 grams of heroin with $300.00 in controlled buy money. This parking lot is approximately 200 feet west of 3110 North 35th Street.

70.     On July 25, 2018, the FBI GTF conducted a controlled buy from "Herron" at the direction of Todd McGown. CS4 purchased 2.93 grams of heroin with $300.00 of controlled buy money in the gangway to the south of 3043 North 35th Street, Milwaukee. This location is approximately one block south 3110 North 35th Street.

71.     Case agents physically observed McGown in the alley adjacent to 3110 North 35th Street in early July 2018.

72.     In my training and experience as a federal agent, I know that it is a common

23

Case 2:18-mj-00103-DEJ   Filed 08/17/18   Page 24 of 40   Document 1

for a drug trafficker's residence to contain evidence of drug trafficking, such as contraband, proceeds, and records.

### 3071A North 19th Street, Milwaukee, Wisconsin

73.     Agents of the FBI GTF believe that 3071A North 19th Street, Milwaukee, WI, is a heroin distribution location for the Harris DTO run by Marques L. Williams (DOB 02/15/1979).

74.     CS4 stated that Marques Williams lived off Burleigh in a yellow and brown house and sold heroin for James Harris. CS4 had personally witnessed both James Harris and Nequann Terry front Williams what s/he believed to be a jab  (case agents know a jab to be $1500 worth of heroin) of heroin approximately three to four times in front of 3071A North 19th Street since June 2018.

75.     CS4 stated that Williams was dealing heroin out of alley off West 19th Street and Burleigh Street.  CS4 stated that Mel had two workers, one that stood at the corner of the gas station off West Hopkins Street and West Burleigh Street who would radio to another worker in the alley off 19th Street when a customer would come to buy narcotics. The worker in the alley would remove a brick in the wall in the alley across from 3071A North 19th Street where the narcotics were stored.  When the narcotics stored in the brick ran out one of the workers would return to 3071A North 19th Street to restock the narcotics they were distributing in the alley.

76.     On July 10, 2018, the FBI GTF conducted a controlled buy from "Luther" an unknown black male at the direction of Marques Williams of 2.05 grams of heroin from the alley directly across the street from 3071A N. 19th Street, Milwaukee. CS4 stated that

24

during the buy "Luther" brought the controlled buy money into the house and gave it to Marques Williams.

77.     On July 12, 2018, the FBI GTF conducted a controlled buy from "Luther" an unknown black male at the direction of Marques Williams of 2.98 grams of heroin from the alley directly across the street from 3071A North 19th Street, Milwaukee. CS4 stated that during the buy "Luther" got a portion of the heroin from 3071A North 19th Street. At the conclusion of this controlled buy, case agents remained around the residence and conducted surveillance on 3071 N 19th Street. Case agents witnessed several suspected narcotics transactions. The majority of the suspected narcotics transactions were done with the suspected buyer in a vehicle doing a hand-to-hand transaction with the suspected seller on a bicycle. It should be noted that the two subjects on bicycles were using hand signals and most cars were in the alley for less than a minute which case agents know to be typical behavior for street level narcotics sales. The most common pattern that case agents witnessed was the driver of a vehicle would drive east on Chambers Street, then drive northbound through the alley, and would exit out of the gas station. Case agents noted that the suspected narcotics transactions that were witnessed were done either in the alley or on 19th Street. Case agents stated that on multiple occasions they witnessed the black male wearing the blue baseball hat (case agents know this to be "Luther") walk toward the residences on the west side of 19th Street.

78.     On July 25, 2018, the FBI GTF conducted a controlled buy from "Luther" an unknown black male of 2.71 grams of heroin in the alley between 18th Street and 19th

25

Street in the 3000 block, this is approximately 100 feet to the east of 3071A North 19th Street, Milwaukee, WI.

79.     Agents have no physical surveillance placing Harris at the location; however, based off telephonic electronic surveillance case agents have placed James Harris' cellphone in the area of 3071A North 19th Street over 25 times since May of 2018.

### 3044 North Richards Street, Milwaukee, Wisconsin

80.     Agents of the FBI GTF believe that 3044 North Richards Street, Milwaukee, WI, is one of two residences used by Roderick Ramsey for heroin distribution.

81.     CS6 stated that there are two locations that CS6 would purchase heroin from Ramsey between July 2017 to February 2018: (1) 3044 North Richards Street, Milwaukee, WI; and (2) 5800 North 91st Street, Milwaukee, WI.

82.     CS6 stated that in May 2018, s/he observed James Harris at Roderick Ramsey's residence 3044 North Richards Street, Milwaukee, WI, when CS6 was purchasing heroin from Ramsey. CS6 observed James Harris walk from a back room during the drug deal with Ramsey.

83.     In late July 2018, CS6 also stated that Ramsey was still actively selling heroin out of 3044 North Richards Street, Milwaukee and 5800 North 91st Street, Milwaukee.

84.     Since 2016, Roderick Ramsey has been the listed utilities subscriber for WE Energies at 3044 North Richards Street, Milwaukee, WI.

85.     On October 12, 2017, Milwaukee Police were dispatched to a battery complaint at 3044 North Richards Street. Milwaukee Police spoke with J.G. who stated

26

that her live-in boyfriend, Roderick Ramsey, struck her in the face several times with a closed fist.

86.     On Thursday March 29, 2018, DEA Agents were conducting surveillance on 3044 North Richards Street when they observed a male enter and exit the residence in a short amount of time. Subsequently the male was arrested and questioned by law enforcement. The male indicated that he had been purchasing heroin from Roderick Ramsey every two days for the last two months. The male stated that he has been at 3044 North Richards Street more than 20 times. The male physically pointed out the address of 3044 North Richards as the location where he met Ramsey earlier that morning to obtain heroin.

87.     In March 2018, case agents observed Ramsey exit 3044 North Richards Street and lock the Chicago gate behind him using keys.

88.     On July 3, 2018, case agents observed Ramsey in the doorway of 3044 North Richards Street with an unknown black female.

89.     On July 30, 2018, the FBI GTF conducted a controlled buy of heroin from Roderick Ramsey in the area of 3044 North Richards Street. During the recorded cellphone call, Ramsey asked if CS6 was closer to 91st Street or to Richards Street. CS6 informed Ramsey that CS6 was closer to 3044 North Richards Street - the heroin purchase was arranged to take place at that location. Case agents set up surveillance on 3044 North Richards Street. A short time later, case agents observed Ramsey driving his girlfriend's white Lincoln MKT bearing license plate ACV-2418 drive southbound on North Richards Street. Case agents observed Ramsey driving this vehicle approximately five times since

June of 2018. Ramsey instructed CS6 to follow him one block south of 3044 North Richards Street just east of Locust Street. CS6 entered the passenger side of the Lincoln MKT and Ramsey opened a false safe containing heroin. CS6 exchanged the controlled buy money for 0.58 grams of heroin. After the deal, case agents observed Ramsey walk onto the porch of 3044 North Richards and disappear from view. Agents observed the Lincoln's lights flash indicating that the vehicle had been locked using a key fob. At that time agents drove by 3044 North Richards Street and observed the right side security gate closed but the interior front door behind the security gate open. The surveillance was then terminated.

90.     On March 29, 2018, DEA Agents were conducting surveillance on 3044 North Richards Street when they observed a white male enter 3044 North Richards Street and exit a short time later. The agents did an investigatory stop of the white male. During the stop, the white male admitted to having illegal items on his person. The white male was searched and found to be in possession of a small amount of heroin. The white male indicated that he had purchased the heroin from inside of 3044 North Richards Street, Milwaukee.

**5800 North 91st Street, Northeast First Floor Apartment, Milwaukee, Wisconsin**

91.     Agents of the FBI GTF believe that 5800 North 91st Street, Milwaukee, WI, is one of two residences used by Roderick Ramsey for heroin distribution. The specific apartment number is unknown.

92.     CS6 stated that there are two locations that CS6 would purchase heroin from Ramsey between July 2017 to February 2018: (1) 3044 North Richards Street,

28

Milwaukee, WI; and (2) 5800 North 91st Street, Milwaukee, WI. CS6 stated that 5800 North 91st Street is an apartment building. CS6 would enter the back door to the apartment into the kitchen. CS6 stated that the door to enter the apartment is the door that is furthest north at the rear of the apartment building. CS6 was unable to see what apartment number is associated with the apartment due to entering the rear door.

93. On May 29, 2018, FBI GTF conducted a controlled buy of heroin from Roderick Ramsey at 5800 North 91st Street, northeast 1st floor apartment, which is the northern most entry door on the east side of the building. CS6 purchased 0.55 grams of heroin for $60.00 in controlled buy money. CS6 stated that CS6 followed Ramsey to the western bedroom to conduct the controlled buy and observed a plate containing what CS6 to be between 10-15 grams of heroin.

94. During a controlled buy on July 30, 2018, Ramsey asked CS6 if s/he was closer to this location at 5800 North 91st Street or the location at 3044 North Richards Street. The controlled buy ultimately occurred in the area of 3044 North Richards Street.

## CONCLUSION

95. Based on the facts contained within this affidavit, case agents believe that there is probable cause that James Harris, Adline Harris, James Coleman, Kurt Parks, Nequann Terry, Roderick Ramsey, Todd McGown, Casey Johnson, Don Tillman, Antoine Jeff, and Marques Williams are heroin traffickers. Case agents further believe that there is probable cause to search the aforementioned locations and vehicles for evidence pertaining to the fruits, instrumentalities, and proceeds of drug trafficking, all of which are detailed more specifically in Attachment B, items to be seized.

## TECHNICAL TERMS

96. Based on my training and experience, I use the following technical terms to convey the following meanings:

97. Wireless telephone: A wireless telephone (or mobile telephone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

98. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of

30

flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

99. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

100. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

101. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

102. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

103. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

104. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

105. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

32

106. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

107. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

108. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

109. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

110.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

111.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

112.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

113.     Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

114.     Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant

34

does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

# ATTACHMENT A

**LOCATIONS AND VEHICLES TO BE SEARCHED:**

A. **1815 1st Avenue, Grafton, Wisconsin**
Single condominium unit attached to a complex of units. It is the southernmost unit in the block long complex. The main entrance is a white east facing screen door with tan interior wooden door. The numbers "1815" are prominently displayed in two-inch black color numerals directly to the left of the white screen door. The lower of the exterior is composed of red brick and tan wood siding. The upper portion of the exterior is composed of brown shingle siding. The roof is composed of brown shingles. There is a secondary exterior door on the west side of the unit adjacent to the parking lot.

B. **330 West Keefe Avenue, Apartment #5, Milwaukee, Wisconsin**
Multi-unit apartment complex having a tan brick exterior with grey trim around the windows and a black tar roof. The numbers "330" are displayed in a horizontal fashion to the west of the south facing front entry door. Apartment #5 is located on second floor southeast corner with the number "5" displayed on the white wood door.

C. **2655 North 15th Street, Milwaukee, Wisconsin**
The lower of a two-story duplex having yellow aluminum siding with white trim around the windows and a black roof. The number "2655" is displayed to the north of the east facing front entry door.

D. **3261 North 30th Street, Milwaukee, Wisconsin**
The lower of a two story duplex having tan aluminum siding with brown window trim and a grey shingled roof and has a brown porch constructed of wood with four pillars. The east facing main entrance door is a black security gate with a white interior door. This leads directly into 3261 North 30th Street lower.

E. **3110 North 35th Street, Apartment #4, Milwaukee, Wisconsin**
Multi-unit apartment complex having brown brick exterior with dark brown trim around the windows and a black tar roof. Apartment #4 is located on the second floor in the north portion of the apartment building. The entrance apartment four is located on the second floor on the east side of the apartment building. The entry door is white and is the northern most door on the east side of the apartment building.

F. **3071A North 19th Street, Milwaukee, Wisconsin**
The upper of a two-story duplex having yellow exterior siding and a red-shingled roof. The number "3071A" is displayed in a horizontal fashion on the east side of

36

the house. The entrance door to 3071A is a white door on the south side of the building.

**G.** **3044 North Richards Street, Milwaukee, Wisconsin**
The lower of a two-story duplex having white aluminum siding with white trim and a brown-shingled roof. The number "3044" is displayed in a horizontal fashion to the south of the west facing security gated front door.

**H.** **5800 North 91st Street, Northeast First Floor Apartment Milwaukee, Wisconsin**
Multi-unit apartment complex having a tan brick exterior with brown and white window trim and a red-shingled roof; that "5800" is displayed in a horizontal fashion above the double white west facing front entry doors. The entrance to the target location is located on the first floor in the northeast corner of the apartment building. The entry door is white and is located on the east side of the apartment building and faces east. The entry door is the northern most door on the east side of the building.

**I.** **Black 2013 Cadillac XTS**, WI registration 659-ZH, VIN#2G61W5S36D9220166, registered to Harris James Trust.

**J.** **White 2014 Lincoln MKT**, WI registration ACV-2418, VIN#2LMHJ5AT2EBL54470, registered to Jasmine Grace (Roderick Ramsey's Girlfriend).

## ATTACHMENT B

**ITEMS TO BE SEIZED:**

1. Any illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

2. Proceeds of drug trafficking activities, including United States currency;

3. Firearms, ammunition, magazines, gun boxes, firearm purchase records or receipts, and other paraphernalia associated with firearms.

4. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

5. Lists of drug customers and related identifying information;

6. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

7. Documents and deeds reflecting the purchase or lease of items obtained with the proceeds from drug trafficking activities;

8. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

9. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

10. Indicia of occupancy, residency or ownership of the premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

38

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).